In re Gary Le Roy BROOKS, Lynda Lee Brooks, a/k/a Pat Brooks, d/b/a Brooks Energy & Construction, f/d/b/a Gardner Rental & Material, Debtors.

EXECUTIVE FINANCIAL SERVICES, INC., Plaintiff,

v.

Gary Le Roy BROOKS and Lynda Lee Brooks, a/k/a Pat Brooks, d/b/a Brooks Energy & Construction, f/d/b/a Gardner Rental & Material, Defendants.

Bankruptcy No. 82–20292.
Adversary No. 82–0125.

United States Bankruptcy Court,
D. Kansas,
at Kansas City.

Nov. 5, 1982.

Michael E. Whitsitt, Overland Park, Kan., for plaintiff.

John T. Flannagan, of Payne & Jones, Chartered, Olathe, Kan., for defendants.

MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for trial on August 3, 1982, and August 26 and 27, 1982, upon

Complaint of Plaintiff, Executive Financial Services, Inc. (EFS), for Relief from Stay and Reclamation and for an Order Directing Trustee to Affirm or Reject Certain Leases. EFS appeared by three officers and its attorney of record, Michael E. Whitsitt. Debtors, Gary LeRoy Brooks and Lynda Lee Brooks, appeared in person and by their attorney of record, John T. Flannagan of the firm of Payne & Jones, Chartered. Joseph H. McDowell, Standing Trustee, also appeared.

The Court also heard Debtors' Objections to EFS Claim No. 4 and EFS Amended Claims No. 20 and 21, and Application of EFS to Modify Order of June 15, 1982, allowing claim for $14,780.12.

These related matters had several common issues:

(1) Whether the agreements between EFS and the Debtors were leases or security agreements; (2) the allowable amounts of EFS's claims; and (3) whether EFS's claim for attorney fees and costs was allowable, and if so, to what extent.

Based on the testimony, exhibits, pleadings and the file herein, this Court previously ruled on the first and second issues in Journal Entry of September 16, 1982, wherein it found that the agreements were security agreements; the Court allowed Amended Proof of Claim No. 20 in the amount of $452.40, the principal balance and accrued interest due and owing as of April 2, 1982 (the date that the bankruptcy petition was filed); and the Court further allowed Amended Proof of Claim No. 21 in the amount of $14,725.94, the principal balance and accrued interest owing on April 2, 1982.

EFS's claims were allowed as secured, with 15 percent interest per annum, to give EFS the present value of its claims, as required by 11 U.S.C. § 1325(a)(5), since the Debtors' plan called for a 59 month payout of EFS's claims.

This Court took under advisement the third issue of whether EFS's claims could properly include attorney fees, costs and other expenses provided for in the security agreements. The parties have submitted memoranda letters and the matter is ready for resolution.

## FINDINGS OF FACT

Based on the exhibits, testimony, memoranda letters and pleadings filed herein, the Court finds as follows:

1. That this Court has jurisdiction over the parties and the subject matter, and that venue is proper.

2. That EFS has two secured claims, allowed in the amounts of $452.40 and $14,725.94, with 15 percent interest per annum.

3. That it is undisputed EFS is oversecured with respect to both claims, given that both claims are secured by real estate as well as the purchase money personalty.

4. That the Debtors signed identical security agreements with respect to the two claims, which read that in the event of the Debtors' default:

"14. ... Lessor shall have the right to exercise any one or more of the following remedies... Lessee shall pay all costs and attorneys' fees incurred in collecting or attempting to collect any sums owed under this lease or in securing possession of property and costs of reconditioning the property.

5. That EFS has requested that $3,416.65 in costs be allowed as part of its secured claims. The $3,416.65 comprises: $60.00 adversary filing fee; $454.82 pre-petition extension fee; $2,314.00 in actual attorney fees incurred from April 1, 1982 to August 31, 1982; $87.83 in actual attorney out-of-pocket expenses for the same period; and $500.00 in estimated future attorney fees for September 1, 1982, and thereafter. EFS attached itemized records documenting its requests for actual attorney fees and expenses incurred through August 31, 1982.

## CONCLUSIONS OF LAW

### II.

Whether or not an oversecured creditor is entitled to fees, costs and expenses as part of its secured claim is governed by 11 U.S.C. § 506(b). That section states:

"To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided under the agreement under which such claim arose."

■ The Debtors contended that § 506(b) does not apply to oversecured creditors in a Chapter 13 case; rather, § 506(b) contemplates a Chapter 7 liquidation. However, 11 U.S.C. § 103(a) clearly provides that Chapter 5 of Title 11 U.S.C. applies in cases under Chapters 7, 11 or 13 of Title 11.

Furthermore, § 506(b) has been routinely applied to give interest, fees and expenses to oversecured creditors in Chapter 13 cases. See *In re Carey,* 8 B.R. 1000, 7 B.C.D. 310 (Bkrtcy.S.D.Cal.1981); *Matter of Smith,* 4 B.R. 12, 6 B.C.D. 424, 2 C.B.C.2d 77 (Bkrtcy. E.D.N.Y.1980); and, see *In re Hart Ski Manufacturing Co., Inc.,* 9 B.R. 397 (Bkrtcy. D.Minn.1981) (Chapter 11).

The Debtors cited *In re Caudle,* 13 B.R. 29, 7 B.C.D. 1301 (Bkrtcy.W.D.Tenn.1981) for the proposition that § 506(b) was inapplicable to oversecured creditors in Chapter 13. There Bankruptcy Judge David S. Kennedy stated at page 34 that an oversecured Chapter 13 creditor was not entitled to interest under § 506(b) because:

"Under the facts and law of *this* Chapter 13 case, the objector's reliance on this Section is completely misplaced. Section 506(b)'s impact is primarily found in situations where collateral is sold by a debtor or bankruptcy trustee. Here, the collateral is being "used" under 11 U.S.C. Section 363. A Chapter 13 extension plan, inter alia, may modify the rights of holders of secured claims other than a claim secured only by a secured interest in real property that is the debtor's principal residence. 11 U.S.C. Section 1322(b)(2). In Chapter 13 cases the compensation to which the holder of a secured claim is entitled is the "present value" under Section 1325(a)(5)(B)(ii), which takes into account the discount of money to be re-

ceived in the future. It is not interest of the contractual kind contemplated under 11 U.S.C. Section 506(b) and requested by the objector." (Emphasis added)

This Court feels compelled to respectfully disagree with Judge Kennedy's view. He starts with the premise that § 506(b) requires that an oversecured creditor receive the contract rate of interest; and he concludes that § 506(b) therefore flies in the face of § 1322(b)(2) and § 1325(a)(5)(B)(ii), which requires only that a creditor receive the amount of interest that would give it the present value of its claim.

■ However, it is the opinion of this Court that § 506(b) requires only that the oversecured creditor receive *some* rate of interest. It doesn't require that it receive the contract rate of interest, although it does require that the contract determine the allowable expenses and costs. Since § 506(b) merely requires some rate of interest, it is consistent with § 1325(a)(5)(B)(ii) and § 1322(b)(2).

Furthermore, the Debtors' reliance on the *Caudle* decision is misplaced. Although Judge Kennedy found that § 506(b) was inapplicable to the Chapter 13 creditor with respect to its claim for interest, he granted the creditor's request for attorney fees therein. At page 32 Judge Kennedy stated:

"...Although not free from doubt, the Court will allow the objector's two net claims as being fully secured in the amounts of $4,518.93 and $1,539.13. (The net claims include requested attorneys' fees for the objector, which fees this Court approves)."

Apparently, Judge Kennedy thinks § 506(b) is inapplicable in Chapter 13 cases only insofar as an oversecured creditor requests its contract rate of interest, but that attorney fees and other costs and expenses can be included in a Chapter 13 oversecured creditor's claim, pursuant to § 506(b).

In *In re Roberts,* 20 B.R. 914, 6 C.B.C.2d 892 (Bkrtcy.E.D.N.Y.1982) Bankruptcy Judge Cecelia H. Goetz disallowed a Chapter 13 oversecured mortgagee's claim for attorney fees; but that case is readily dis-

tinguishable from the case at bar. Judge Goetz found that § 506(b) was a narrow exception to the so-called American Rule that absent some statute *or contract* calling for a contrary result, each litigant bears the costs of its own attorneys. Judge Goetz found that § 506(b) provided attorney fees when the contract so provided, but that such attorney fee clauses in contracts were to be strictly construed. Upon strictly construing the clause at issue therein, Judge Goetz found that it did not provide for attorney fees for pursuing a claim in bankruptcy; rather the clause provided for attorney fees arising from the mortgagee's attempts to "remedy the default" by advancing delinquent taxes and the like:

■ In the case at bar, the attorney fee clause in the security agreements specifically provide for attorney fees and other expenses arising from collecting or securing possession of the property. Thus, this Court concludes that under § 506(b) EFS is entitled to have its claim for attorney fees, costs and expenses allowed as secured, to the extent they are reasonable, because the security agreements herein provide for such fees and expenses when EFS pursues payment of its claim or reclamation of the property.

## II.

■ The Debtors contended arguendo, that even if attorney fees were allowable secured claims as per the security agreements, the fees herein, to the extent attributable to post-petition work, are not allowable, because the security agreements terminated, by their own terms, upon the Debtors filing bankruptcy. The Court finds this argument wholly without merit. The security agreements in toto, remained in force after the filing of the petition, notwithstanding any bankruptcy termination clauses in the security agreements.

■ The Debtors further contend that the interest and attorney fees incurred post-petition are not allowable since post-petition interest is not allowable under § 502. The Court finds that this theory is equally without merit in this case. Section 506(b) is an exception to § 502, and allows interest and reasonable fees where (as in the instant case) the claim is secured by property the value of which is greater than the amount of the claim.

## III.

The Debtors raised several equitable arguments for why these fees and costs should not be allowed. They argued that said allowance would destroy the feasibility of their plan and work to the detriment of the unsecured creditors. This Court is unmoved by that argument in that unsecured creditors are always in a weaker position than secured creditors. Furthermore, this Court will not ignore the requirements of § 506 in the interest of feasibility any more than it will ignore the requirements of § 1325 in the interest of feasibility. If the Debtors wish the protections and privileges of Chapter 13, they must provide the corresponding requisite protections to their secured creditors.

The Debtors also argued that allowing attorney fees to oversecured creditors encourages frivolous post-petition litigation to the detriment of the Debtors and the unsecured creditors. However, § 506(b) deters such abuses by allowing only *reasonable* fees, costs and expenses. It is the Court's province to closely examine requested fees and determine to what extent they are reasonable.

The Tenth Circuit has adopted guidelines promulgated by the Fifth Circuit for determining if attorney fees are reasonable. In *Matter of Permian Anchor Services, Inc.,* 649 F.2d 763, 768 (10th Cir.1981) the Court stated:

"... This court in another context has held that reasonable attorneys' fees are to be based upon an evidentiary inquiry which meets generally the guidelines set forth in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). Nearly identical guidelines have been adopted by the American Bar Association Code of Professional Responsibility, DR 2–106 ... (citations omit-

ted)... The rationale of these cases ought to apply to a determination of reasonable attorneys' fees in a bankruptcy proceeding..."

In *Johnson, supra,* at 717–719, the Fifth Circuit adopted the following guidelines:

(1) time and labor required;

(2) novelty and difficulty of the questions;

(3) skill requisite to perform the legal service properly;

(4) preclusion of other employment by the attorney due to acceptance of the case;

(5) customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or circumstances;

(8) amount involved and results obtained;

(9) experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client;

(12) awards in similar cases.

### IV.

■ Applying those guidelines to the case at bar, the Court finds that EFS's request for $2,314.00 in attorney fees incurred from April 1, 1982 to August 31, 1982, is reasonable. The fees are based on 28.6 hours at $60.00 per hour and 9.2 hours at $65.00 per hour. The Court finds that the hours spent were reasonable considering the difficulty of the questions and the skill requisite to resolution of the questions. The Court further finds that the hourly fees were customary in this area and were comparable to fees charged in similar cases. Accordingly, the Court allows EFS $2,314.00 in attorney fees as part of its secured claims.

With respect to the requested attorney expenses of $87.83, the Court finds that they are also reasonable. The expenses comprise: Xerox charges of $19.35; long distance telephone charges of $6.08; copy-ing charges at the law library of $2.40; and the $60.00 adversary filing fee. Accordingly, the Court allows EFS $87.83 in attorney expenses as part of its secured claims.

■ EFS has also requested $500.00 in estimated future attorney fees to be incurred subsequent to September 1, 1982. This Court will not approve estimated attorney fees. This Court is bound to disallow any request for attorney fees absent documentation by time records. Accordingly, EFS's request for estimated attorney fees in the amount of $500.00 is disallowed.

EFS has requested $60.00 in costs, for filing the instant adversary. This request is duplicative. The $60.00 was also requested as part of the attorney expenses. Accordingly, the Court disallows EFS's request for $60.00 in costs.

■ Finally, EFS has requested $454.82 in costs for a prepetition extension fee assessed against the Debtors when EFS extended the due date on one of the notes at issue herein. By the terms of the security agreements, the Debtors are liable for costs incurred in EFS collecting or attempting to collect money or possession of property. The Court fails to see how an extension fee falls within the language of the security agreement. Accordingly, the Court disallows EFS's request for $454.82 in costs.

IT IS THEREFORE BY THE COURT ORDERED that EFS be and it is hereby granted its claim totaling $2,401.83 as secured, for attorney fees and expenses.

IT IS FURTHER ORDERED that EFS's request for estimated attorney fees in the amount of $500.00 be and the same is hereby denied.